ALBANY,
Jan. 1812.

FONTAINE
v.
COL. INS. Co.

———◦❀◦———

FONTAINE *against* THE COLUMBIAN INSURANCE
COMPANY.

THIS was an action on a policy of insurance on the *cargo* of the ship *Concord*, at and from *Guadaloupe* to *New-York*. The defendants paid into court 1,060 dollars, under the common rule.

The cause was tried before the *Chief Justice*, at the *New-York* sittings, in *December*, 1810, when a verdict was taken for the plaintiff for 1,500 dollars, subject to the opinion of the court, on the following case:

On her voyage, the ship was captured by a *British* cruiser, and sent into *Antigua*, on the 14th of *October*, 1808, where she was libelled in the vice-admiralty court. A claim was put in by the master, and part of the cargo was released, but the residue, part of which belonged to the plaintiff and another person, was detained for further proof, to be produced in three months, with leave to the plaintiff to take the property, on giving security for the appraised value, and paying the costs. He procured *Hall & Rose*, merchants at *Antigua*, to become security; and on their giving the security and paying the costs and charges, the property was delivered to the master, on the 28th of *October*.

Pursuant to his agreement with *Hall & Rose*, the master drew two bills of exchange in their favour, on the owners of the ship in *New-York*, one of which was for the appraised value of the part

*Insurance on goods from Guadaloupe to New-York. The vessel was captured by a British cruiser and carried into Antigua, and libelled in the admiralty court there. The master put in a claim, and the goods were detained for further proof, but were delivered to the master on his giving security for their appraised value and paying the costs. The master procured A. a merchant in Antigua, to give the security, and also to pay the costs and o-ther expenses for the ship and cargo;*

*and for the* indemnity of A. the master drew bills of exchange on his owner in *New-York*, and pledged the ship and goods to A. to secure the amount, which included a *commission* of 5 *per cent.* charged by A. on the sums advanced by him, and a *premium of insurance* paid by him to *insure* the ship and cargo, so pledged, from *Antigua* to *New-York.*

The cargo was delivered to the agent of A. in *New-York*, and the insured, to obtain the possession of his property, paid his proportion of the charges and expenses, including the *commissions* and *premium* of insurance. It was *held*, that the master having acted with good faith, and the charges being reasonable and necessary, the insured were entitled to recover the amount so paid, against the insurers. In case of *necessity*, the master may sell a part, or hypothecate the whole, of the cargo, for the necessary repairs of the ship; but he cannot mortgage or hypothecate the ship for the benefit of the cargo.

ALBANY,
Jan. 1812.

FONTAINE
v.
COL. INS. Co.

of the cargo detained for further proof, and the other for 1,982 dollars and 23 cents, the amount of the disbursements of *Hall & Rose*, for the vessel and cargo, and for the costs of the claim in the court of admiralty, including a commission of 5 *per cent.* as a compensation for their services, performed at the master's request, and including a premium for an insurance effected by *Hall & Rose*, on the ship and cargo to *New-York;* the master having, by an instrument of *bottomry* and *hypothecation,* pledged the ship and cargo to them, as security for the payment of the bills of exchange. The ship and cargo arrived safe at *New-York,* and the security given at *Antigua* was afterwards released, on the production of further proof. The property of the plaintiff was delivered to the agent of *Hall & Rose,* in *New-York,* who held it until he was paid the sum of 1,291 dollars and 43 cents, being the plaintiff's proportion of the particular and general average, as calculated by an insurance broker. The plaintiff paid that sum to the agent of *Hall & Rose,* and received his property. The present suit was brought to recover of the defendants the amount so paid, with interest.

The only question was, whether the defendants were answerable for the plaintiff's proportion of expenses, so far as respected the *items* charged by *Hall & Rose,* for their *commissions,* and the *premium* of insurance.

*Colden,* for the plaintiff.

*C. I. Bogert & S. Jones,* jun. contra.

*Per Curiam.* There was nothing unreasonable, and, probably, nothing unusual, in these charges of *Hall & Rose.* It was not to be expected or required, that a mercantile house abroad should make advances and become security, without some compensation, and without being completely protected against loss. The 5 *per cent.* was their compensation, and the mortgage of the property to them, and the insurance of it, when they parted with the possession, was their indemnity from loss. The security, by means of the mortgage, would have been greatly weakened, and put at hazard, if the property had not been insured. The insurance was necessary to render the mortgage effectual. There is no reason to suppose that the captain did not act with good faith, and with due discretion, in reclaiming the property. No better terms could have been obtained; it was the duty of the captain to

ALBANY,
Jan. 1812.

FONTAINE
v.
COL. INS. CO.

accept of those terms, and not to leave the property behind. The plaintiff's cargo was mortgaged to *Hall & Rose*, in consideration of their becoming security to answer for its value, and there is no reason to doubt of the power of the master to mortgage it. The principles of the maritime law clothe him with the power of agent of the cargo when cases of extremity occur. He may sell a part, or he may hypothecate the whole cargo, even for the necessary repairs of the ship, when that act is required to enable him to continue the voyage. Though, ordinarily, he is the mere carrier of the cargo, yet in a case of difficulty and peril, he becomes, *ex necessitate*, a trustee of it, with a large and liberal discretion, and this character is then given to him from public policy, for without this power the cargo might be left to perish. (*The Gratitudine*, 3 *Rob. Adm.* 240.) If the master has this power over the cargo for repairs to the ship, it exists, in at least equal force, when the interest of the cargo is directly in question; and this case contains intrinsic evidence, that the terms on which the assistance of *Hall & Rose* was procured, were as favourable as any that could have been obtained. The plaintiffs had no agent or consignee at *Antigua*, for none appears, or is to be presumed. It was an island to which the ship was carried by the captors. To whom was the captain to apply for aid? If *Hall & Rose* had exacted exorbitant compensation or security, the presumption would have been different, and it might have been incumbent on the plaintiff to have shown that other applications for security had been made, and failed. The indemnity required by *Hall & Rose* of a mortgage of the cargo released, was reasonable for them to ask, and within the power of the captain to give; and having taken it, the insurance was necessary to render the security perfect, and the premium for the insurance was no more than a necessary charge attending the taking of the security.

But the captain went further and mortgaged the ship, and so far he acted without authority; for to mortgage the ship for the benefit of the cargo, seems to be going beyond his trust, or the rules of law. Admitting, however, that the hypothecation of the ship was void, still it was exacted, and the premium of insurance for both ship and cargo was included in the bill of exchange, for which the plaintiff's cargo stood pledged. The payment of that premium became a necessary expenditure in the recovery of the plaintiff's property. The question on the validity of the hypothecation of the ship does not, then, arise in this case. The plaintiff was bound to pay his proportion of that pre-

mium.   It was one of the *conditions* on which their property was recovered, and the difference between a premium of insurance upon the cargo only, and upon the ship and cargo, could not be so material as to affect the good faith of the master, and the necessity of acceding to the terms upon which *Hall & Rose* offered their assistance.

There ought, therefore, to be no deduction from the plaintiff's claim, on account of either of the above *items* of commissions or premium.

Judgment for the plaintiff.